IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03181-CYC

GABRIEL JORDAN,

     Plaintiff,

v.

LAURA FRANKLIN,
MAGEN DODGE, and
KAYRA LOPEZ,

     Defendants.

---

**ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

     For a claim of malicious prosecution under 42 U.S.C. § 1983 to be viable, the defendant must have been acting under the color of law. Defendant Kayra Lopez, a public-safety cadet during the events of this case, moves for summary judgment on plaintiff Gabriel Jordan's section 1983 claim against her, arguing that her report against him to authorities was not such an action. ECF No. 59. When defendants in a section 1983 malicious-prosecution action assert qualified immunity, as police officer defendants Magen Dodge and Laura Franklin do in their summary-judgment motion, ECF No. 57, a plaintiff must show a lack of arguable probable cause. Because no reasonable jury could find that Lopez exercised the authority of the state or that Dodge and Franklin lacked arguable probable cause, summary judgment is **GRANTED** on the plaintiff's federal-law claim. Without any federal claims left to ground its jurisdiction, the Court dismisses the remaining state-law claims without prejudice.

## **BACKGROUND**

The following facts are undisputed and identified by reference to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

This case arises from events in September and October 2023. On September 12, 2023, the plaintiff, a Denver Police Technician, and Lopez, a public safety cadet, attended a Denver Police Department training exercise. ECF No. 59-2 ¶¶ 1–4, 27; ECF No. 62-1 at 17. During the final debrief, Lopez noticed the plaintiff looking at her and moving his body, making her uncomfortable. ECF No. 59-2 ¶¶ 5–6. Four other people were also on scene. ECF No. 57-2 at 1. Lopez informed her cadet leader of the incident; the leader directed her to a Sergeant Quinones, whom Lopez told that she saw the plaintiff masturbating. *Id.* ¶ 8; ECF No. 62-1 at 67. Sergeant Quinones brought Lopez to Franklin, an internal-affairs sergeant. ECF No. 59-2 ¶¶ 9, 11.

Lopez told Franklin that she could feel the plaintiff looking at her, that he had a bulge in his pants that she believed to be his penis, and that he was moving his hips forward and applying pressure to his pelvis with a pillar. ECF No. 59-3 at 349–57, 381–83, 973–992. She provided Franklin with videos and photographs that she took of the incident. ECF No. 59-2 ¶ 12. After this conversation concluded, Lopez had no further contact with Franklin. *Id.* ¶ 17. She did not ask for discipline to be imposed against the plaintiff or that he be criminally charged. *Id.* ¶¶ 13–14.

Franklin also met with Sergeant Quinones on the day of the incident, who explained what she saw in Lopez's videos and confirmed that Lopez had a strong emotional reaction. ECF No. 57-13 ¶ 7; ECF No. 57-4 at 3:91–3:102, 7:234–7:250, 10:349–10:363. Sergeant Bobby Waidler, the plaintiff's supervisor, provided Franklin with a written report on the same day, recounting his interaction with Lopez. ECF No. 57-5; ECF No. 57-13 ¶ 9.

Concluding that Lopez's statement was clear and credible, ECF No. 57-13 ¶ 14, Franklin reached out to the Denver District Attorney's Office. ECF No. 77 at 14. She consulted with a

prosecutor and provided the evidence that she gathered. *Id.* at 13; ECF No. 57-13 ¶ 27–29. The prosecutor approved the charges and informed Franklin to proceed with a Unified Summons and Complaint. ECF No. 57-13 ¶¶ 29–30; ECF No. 57-8. Lopez provided no input for and did not testify in support of any of this. ECF No. 59-2 ¶¶ 20–22.

Shortly thereafter, the plaintiff faced criminal charges. *See* ECF No. 62-1 at 114–15. As required by law, Dodge then submitted a "Notification of Criminal Investigation" to the Colorado Police Officer's Standard and Training Board, ECF No. 57-12 at 2, representing her principal involvement in this case. *See id.* ¶¶ 3–4. On September 14, 2023, Franklin completed her probable cause affidavit, ECF No. 57-13 ¶ 29, but soon thereafter, personnel within the District Attorney's Office raised concerns about the provability of the criminal case. *Id.* at 168. In October 2023, the District Attorney's Office moved to dismiss the case, citing an inability to prove it beyond a reasonable doubt. *Id.* at 306.

A year later, the plaintiff filed this action in state court against Franklin and Dodge, who removed the case to this Court. ECF Nos. 1, 4. The plaintiff then filed a motion to amend his complaint to add Lopez, which the court granted. ECF Nos. 23, 24. The amended complaint asserts three claims. The claim upon which federal jurisdiction rests, Claim 3, asserts a Fourth Amendment claim for malicious prosecution via 42 U.S.C. § 1983. ECF No. 25 ¶¶ 109–129; *see* ECF No. 1 ¶¶ 5, 7. Claim 1 invokes Colo. Rev. Stat. § 13-21-131 and asserts that the defendants violated the plaintiff's rights by causing a wrongful arrest in violation of the Colorado constitution. ECF No. 25 ¶¶ 71–81. Claim 2 asserts state-law claims for malicious prosecution and abuse of process, as well as Colo. Rev. Stat. § 13-21-131. *Id.* ¶¶ 82–108.

The parties consented to the jurisdiction of a magistrate judge, ECF No. 34, and a number of motions followed: Lopez first moved to dismiss. ECF No. 28. Before the Court decided that

motion, Lopez filed a motion for summary judgment, ECF No. 57, and Dodge and Franklin filed their own. ECF No. 59. The plaintiff filed his own motion for summary judgment. ECF No. 62.

## ANALYSIS

Where, as here, there are "[c]ross-motions for summary judgment," they "are treated as two individual motions for summary judgment and held to the same standard." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."

*Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

The plaintiff proceeds pro se. Federal courts must construe *pro se* plaintiff's pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," though it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## I.    Defendant Lopez: Malicious Prosecution Under Section 1983

Lopez argues that she did not act under color of state law and, thus, no claim under section 1983 can lie against her. ECF No. 59 at 10–14. That statute provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Accordingly, it "created a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting under color of state law." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (quotation marks omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). Lopez did not exercise such power.

After all, "[a]n individual does not act under color of law merely by reporting an alleged crime to police officers who take action thereon." *Pioneer Nat. Res. Co. v. Gatza*, No. 05-CV-

02434-CBS, 2006 WL 1547310, at *4 (D. Colo. June 2, 2006). Such actions are taken as private actors, not as an exercise of the power of the state. And while Lopez was a state employee as a public safety cadet, it is "well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola*, 55 F.3d at 493 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995)). To hold such a person liable as a state actor, the action in question must be one taken "on account of the authority vested in the employee by the state." *Id.* Lopez's reporting was no such action. She was an "entry-level trainee" training in the principles of public-safety work. ECF No. 62-1 at 69. She had no authority to recommend charges or perform any of the other official actions of which the plaintiff complains in this case. *See* ECF No. 59-2 ¶ 24. Her actions, then, did not represent an exercise of the limited authority she had but instead were taken in her capacity as a private actor.

That alone does not end the inquiry. "Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations," the Tenth Circuit "ha[s] applied various analyses and referred to them as the 'nexus test,' the 'public function test,' the 'joint action test,' and the 'symbiotic relationship test.'" *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013) (citing *Johnson v. Rodrigues*, 293 F.3d 1196, 1202–03 (10th Cir. 2002)). Most of these are far afield from this case. The nexus test, for instance, evaluates whether the state has coerced or compelled a private actor to perform the challenged action, *id.*, but there is no evidence that Lopez's report was coerced or compelled. The public function test inquires whether the challenged action "is a traditional and exclusive function of the state," *id.* at 777, but private crime-reporting is not such a function. And the symbiotic relationship test is limited to "substantial, intimate long-term relationships," *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235–36 (10th Cir. 2020) (citing *Burton v. Wilmington Parking*

*Auth.*, 365 U.S. 715, 725 (1961)), but no evidence shows such a relationship here between Lopez and the state.

The joint action test comes closer, but even under this test, Lopez did not act under color of state law. This test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995). It can make cadets liable when they participate in police operations, *see Street v. Surdyka*, 492 F.2d 368, 374 (4th Cir. 1974), but here, Lopez merely reported an incident to the authorities and had no subsequent involvement in charging the plaintiff. ECF No. 59-2 ¶¶ 8–9, 11, 17–18, 20–23. It can also be satisfied if a private defendant conspires with state actors, but only if "both public and private actors share a common, unconstitutional goal." *Barnett*, 956 F.3d at 1235 (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000)). The undisputed facts, however, demonstrate that Lopez did not communicate further with Franklin about the case after her initial interview, did not ask for the plaintiff to be charged, and did not ask for him to be disciplined. ECF No. 59-2 ¶¶ 8–9, 11, 17–18, 20–23. Lopez, then, only reported what she deemed to be criminal activity to the authorities, and "furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law." *Barnett*, 956 F.3d at 1235 (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016)); *see Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115 (10th Cir. 1987). Instead, "joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." *Schaffer*, 814 F.3d at 1157. No evidence shows such influence from Lopez on Franklin or the District Attorney.

The plaintiff protests. He says that Lopez's position and family associations with police officers gave her easier access to reporting him. ECF No. 69 at 4. Even if true, "there is no reason to believe that [Lopez] would not have done, or been able to do, what [s]he did here without [her] access to" state officials. *Hoffman v. Off. of State Att'y, Fourth Jud. Cir.*, 793 F. App'x 945, 952–53 (11th Cir. 2019) (citing *Myers v. Bowman*, 713 F.3d 1319, 1329–31 (11th Cir. 2013)); *see* ECF No. 59-9 ¶ 6. Without such reason, there is no joint action between Lopez and the state. To be sure, the reporting may have happened faster, *see* ECF No. 69 at 4, but the plaintiff cites no law indicating that this makes it action under color of law. Nor is this case akin to a police forensic analyst falsifying forensic evidence. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1282–83, 1293 (10th Cir. 2004). Lopez was not a police officer, did not wield what authority she had as a cadet in this case by making a statement to Franklin, and had no involvement in charging the plaintiff beyond reporting her observations. ECF No. 52 ¶¶ 12, 16, 17. That does not wield the authority of the state.

In short, there is no genuine issue of material fact as to whether Lopez was acting under color of law when she reported her observations to Franklin. Acting as a witness, even one with some connection to the police, is not, without more, acting under the color of law. As "[t]he 'under color of state law' requirement is 'a jurisdictional requisite for a § 1983 action,'" *Jojola*, 55 F.3d at 492 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981)), Lopez's motion for summary judgment is granted on the plaintiff's section 1983 malicious prosecution claim.

## II.    Defendants Dodge and Franklin: Malicious Prosecution Under Section 1983

Dodge and Franklin contend that the plaintiff's section 1983 claim for malicious prosecution against them, ECF No. 25 ¶¶ 109–129, cannot survive summary judgment. ECF No. 57. In this circuit, a court "addressing § 1983 malicious prosecution claims . . . use[s] the

common law elements of malicious prosecution as the 'starting point' of [its] analysis." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007). Those elements are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id.* at 1258. "[T]he ultimate question," however, "is whether [the] plaintiff has proven the deprivation of a constitutional right," *id.* at 1257, namely a lack of probable cause in violation of the Fourth Amendment, *see Shed v. Okla. Dep't of Human Servs.*, 729 F. App'x 653, 656 (10th Cir. 2018).

Dodge and Franklin assert that they had probable cause and, moreover, are entitled to qualified immunity. "[W]hen a defendant asserts qualified immunity, the plaintiff bears the burden of establishing first, 'that the defendant's actions violated a constitutional or statutory right,' and second, 'that the right at issue was clearly established at the time of the defendant's unlawful conduct.'" *Sperry v. Maes*, 592 F. App'x 688, 693 (10th Cir. 2014) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Id.* Ordinarily, a court evaluates probable cause by determining "if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (quotation omitted). It "does not require facts sufficient to establish guilt, but does require more than mere suspicion." *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998) (citing *United States v. Hansen*, 652 F.2d 1374, 1388 (10th Cir. 1981)).

But "[i]n the context of a qualified immunity defense," a court "ascertain[s] whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022) (quoting *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014)) (citation modified). "In other words, in the § 1983 qualified-immunity context, an officer may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable—*viz.*, so long as he possesses 'arguable probable cause.'" *A.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc)). This applies the "clearly established law" prong of the qualified-immunity defense to the standard of probable cause. *See id.* Measured by that metric, the plaintiff's claim cannot withstand scrutiny.

After all, a victim's statement "may establish probable cause absent some reason to think the statement not trustworthy." *Cortez*, 478 F.3d at 1121. Untrustworthiness, for example, may arise when the victim's statement both has inherent indicia of being unreliable and a lack of corroboration. *Coones v. Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cnty./Kan. City*, 166 F.4th 1, 29 (10th Cir. 2026). But here, the victim's statement bore no such indicia — it is not, for instance, "uncorroborated hearsay . . . from a young child," *id.* — and it is partially corroborated by two videos and a photo of the plaintiff. To be sure, the corroboration does not establish proof beyond a reasonable doubt of the crime. *See* ECF No. 62 at 7–8. Lopez candidly acknowledged as much during her interview with Franklin. ECF No. 62-1 at 238. But the photo and videos do demonstrate that the plaintiff stood in front of the victim with his bulge in view. ECF No. 62-1 at 49–51.

10

A victim's statement may also be untrustworthy if she "has a known history of dishonesty, particularly with respect to the accused, or if any facts in the record 'suggest[ ] an ulterior motive for [the declarant's] statements.'" *Coones*, 166 F.4th at 29. Neither circumstance is present here. The plaintiff points to no ulterior motive Lopez had. And while he points to Lopez's deposition testimony indicating that she might be able to convince herself of a fact if she thought about it too hard, ECF No. 62 at 13, this statement — which arose in a context wholly different than Lopez's statement to Franklin, ECF No. 62-1 at 245–46 —  does not demonstrate "a known history of dishonesty." *Coones*, 166 F.4th at 30. In short, "when a 'victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator.'" *Schreiner v. City of Louisville*, No. 15-CV-00287-REB-CBS, 2015 WL 9437882, at *6 (D. Colo. Dec. 4, 2015) (citing *Brodie v. Fuhrman*, No. 07–CV–4212 DGT, 2010 WL 1189347, at *6 (E.D.N.Y. Mar. 29, 2010)), *report and recommendation adopted,* 2015 WL 9315736 (D. Colo. Dec. 23, 2015). Accordingly, Franklin was entitled to rely on Lopez's statement; at the very least, the plaintiff points to no clearly established law pointing her in the opposite direction.

The plaintiff protests. Franklin, he says, should have interviewed more witnesses before asking for charges against him. ECF No. 62 at 7–11. Of course, "[t]he Constitution does not entitle a suspect to a perfect investigation." *Neil v. City of Lone Tree*, No. 1:23-CV-01155-RMR-SBP, 2024 WL 4204142, at *11 (D. Colo. Aug. 28, 2024), *recommendation adopted,* 2024 WL 4252820 (D. Colo. Sep. 20, 2024). Indeed, "[o]nce a police officer has a reasonable basis for believing there is probable cause, [s]he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Id.* (quoting *Barham v. Town*

11

*of Greybull Wyo.*, 483 F. App'x 506, 508 (10th Cir. 2012)). That includes interviewing all potential witnesses. *See e.g.*, *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994). The general rule that the plaintiff cites from *Romero v. Fay*, 45 F.3d 1472, 1476–77 (10th Cir. 1995), that readily-available fundamental evidence should be investigated, ECF No. 62 at 10, does not establish the contrary. In the end, the *Romero* court found that qualified immunity should have been granted. *Romero*, 45 F.3d at 1481. And, in all events, the Tenth Circuit has found that no clearly established law required the police to interview the only firsthand witness of an alleged act of masturbation where there was no inherent unreliability in the statement. *Beattie v. Smith*, 543 F. App'x 850, 856–59 (10th Cir. 2013). Here, of course, the police did conduct that interview.

The plaintiff pivots. The District Attorney's later dismissal of his case shows that it lacked probable cause. ECF No. 62 at 12. But "[s]ettled law makes it clear that probable cause is measured at the moment the arrest occurs and must derive from facts and circumstances based on reasonably trustworthy information." *Cortez*, 478 F.3d at 1121 (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). His case later being dismissed, then, does not move the needle in his favor. *See, e.g.*, *Vazquez-Pulido*, 155 F.3d at 1216 (citing *Hansen*, 652 F.2d at 1388).

Finally, the plaintiff faults Franklin for omitting certain evidence from her probable-cause statement. ECF No. 62 at 12–13. But he ultimately undermines his own argument as being "academic" and never indicates how including this evidence actually would have vitiated probable cause.

Because there is no genuine issue of material fact as to whether arguable probable cause existed in this case, Franklin and Dodge's motion is granted on the plaintiff's section 1983 malicious-prosecution claim.

III.    <u>State-Law Claims</u>

That disposes of the only federal law claim the plaintiff brings. The remaining claims all arise under state law, over which the court's jurisdiction is not mandatory. *See* ECF No. 25 ¶¶ 71–108. The plaintiff's motion for summary judgment does, in passing, mention section 1983 in connection with his abuse-of-process and false-arrest claim. ECF No. 62 at 15, 17–18. To the extent this is a potential request to amend the complaint, *see Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 971 (10th Cir. 2021), it comes over ten months past the deadline for amending pleadings, *see* ECF No. 22, without any good cause for doing so and is therefore denied.

"Under 28 U.S.C. § 1367(c)(3), when all the 'federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'" *Timken v. S. Denver Cardiology Assocs., P.C.*, No. 23-cv-02859-GPG-SBP, 2024 WL 4407003, at *4 (D. Colo. Aug. 29, 2024), *aff'd*, 155 F.4th 1227 (10th Cir. 2025). No party suggests that this is anything other than the usual case. Accordingly, the Court orders the remaining state-law claims be dismissed without prejudice for lack of subject-matter jurisdiction. *See id.*

CONCLUSION

For the foregoing reasons, the defendants' Motions for Summary Judgment, ECF Nos. 57, 59, are **GRANTED in part**. The Court further **ORDERS** that:

1.  The plaintiff's Motion for Summary Judgment, ECF No. 62, be **DENIED**. *See, e.g.*, *Dixon v. Silva-Markham Partners & Koelbel & Co.*, No. 1:22-CV-01558-NYW-SBP, 2025 WL 685091, at *16 (D. Colo. Feb. 21, 2025), *recommendation adopted*, 2025 WL 942782 (D. Colo. Mar. 28, 2025);

2.  **JUDGMENT** enter in favor of the defendants and against the plaintiff on Claim 3;

3.  Claims 1 and 2 be **DISMISSED without prejudice**; and

    4.   Lopez's Motion to Dismiss, ECF No. 28, be **DENIED as moot**.

The Clerk of the Court is directed to close this case.

       DATED this 31st day of March, 2026, at Denver, Colorado.

                        BY THE COURT:

                        Cyrus Y. Chung
                        United States Magistrate Judge